**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-25662-CIV-ALTONAGA/Reid**

**JOSE CASTRO**,

Petitioner,

v.

**U.S. DEPARTMENT OF HOMELAND SECURITY**, *et al.*,

Respondents.
_______________________________/

**ORDER**

**THIS CAUSE** came before the Court on Petitioner, Jose Castro's Petition for Writ of Habeas Corpus [ECF No. 1], filed on August 19, 2026. Petitioner challenges his detention in Respondents' custody. (*See generally id.*). Respondents filed a Response [ECF No. 5]; to which Petitioner filed a Reply [ECF No. 6]. The Court has reviewed the record, the parties' written submissions, and applicable law. For the following reasons, the Petition is denied.

## I. BACKGROUND

Petitioner is a Cuban citizen who was paroled into the United States in October 2015. (*See* Resp. 2 (citations omitted)).[1] On February 23, 2019, U.S. Immigrations & Customs Enforcement ("ICE") detained Petitioner; and on March 16, 2019, an immigration judge ordered Petitioner removed from the country. (*See id.* 2–3 (citations omitted)). On April 24, 2019, ICE released Petitioner from custody. (*See id.* 3 (citations omitted)). On February 20, 2025, Petitioner applied for an adjustment of status under the Cuban Adjustment Act ("CAA"); his application remains

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

pending. (*See* Pet. ¶¶ 4, 30 (citations omitted)). On August 18, 2026, ICE again detained Petitioner. (*See* Resp. 3 (citation omitted); Pet. ¶ 5).

Petitioner asserts two claims for relief. (*See generally* Pet.). In Count I, Petitioner contends his approximately one-and-one-half-month detention is unconstitutional under *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See* Pet. ¶¶ 53–56). In Count II, Petitioner brings a claim for "violation of due process rights, adjustment of status"; although unclear, Count II appears to be a due process claim premised on the idea that Petitioner's detention interferes with his ability to seek adjustment of status. (*Id.* 14 (capitalization altered; emphasis omitted)).

## II. LEGAL STANDARD

District courts have the authority to grant petitions for writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may issue to a petitioner who demonstrates he is detained in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's habeas jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas*, 533 U.S. at 687.

## III. DISCUSSION

***Jurisdiction.*** The Court has previously rejected Respondents' arguments regarding the jurisdiction stripping provision at 8 U.S.C. section 1252(g). *See, e.g.*, *Alfoqahaa v. Mullin*, No. 26-cv-22719, May 20, 2026 Order [ECF No. 10] 5–6 (S.D. Fla. 2026). Respondents supply no reason to depart from the Court's prior conclusion (*see* Resp. 4–5), and the Court concludes it has jurisdiction over this action.

***Count I.*** In Count I, Petitioner asserts his approximately one-and-one-half-month detention violates 8 U.S.C. section 1231, as interpreted in *Zadvydas*, because his removal is not

significantly likely in the reasonably foreseeable future. (*See* Pet. ¶¶ 53–56; *see also id.* ¶¶ 43–48).

Petitioner is subject to a final order of removal. (*See id.* ¶ 2 (citation omitted); Resp. 3 (citations omitted)). Under the Immigration and Nationality Act, ICE is required to remove an alien subject to a final order of removal within 90 days. *See* 8 U.S.C. § 1231(a)(1)(A). Certain aliens "may be detained beyond the removal period[,]" *id.* § 1231(a)(6) (alteration added); but under *Zadvydas*, after six months, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [the] statute[,]" 533 U.S. at 699 (alterations added; citation omitted).

Put differently, detention for up to six months is presumptively reasonable, while an alien may be held in custody beyond six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. "Therefore, in order to state a claim under *Zadvydas*[,] the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (alteration added). The Government must then "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Petitioner has been detained for less than six months. His *Zadvydas* claim is premature and thus fails. *See Akinwale*, 287 F.3d at 1052; *Quesada v. U.S. Dep't of Homeland Sec.*, No. 26-cv-505, 2026 WL 776141, at *3 (M.D. Fla. Mar. 19, 2026 ("Because [the petitioner] has not been physically detained for six months, his *Zadvydas* claim fails." (alteration added; citations omitted)); *Grigorian v. Bondi*, No. 25-cv-22914, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025) (same).

Petitioner appears to advance a theory premised on a misreading of *Zadvydas* and related authority, one whereby the presumptively reasonable six-month post-removal detention period detention begins to run when an alien is ordered removed, independently of whether he is physically in Government custody. (*See, e.g.*, Pet. ¶ 55 ("Petitioner's removal order is from 2019, thus there is no denying the six-month removal period has long lapsed."); Reply 2 (asserting the six-month presumptively reasonable detention period expired in September 2019)). This position is unsupported and frivolous. That the Supreme Court in *Zadvydas* used the phrase "post-removal-period detention" does not mean that a habeas petitioner is considered physically detained beginning on the date an order of removal is entered against him. *Zadvydas*, 533 U.S. at 689.

Petitioner cites no authority concluding otherwise. For example, in *Chumachenko v. Noem*, by stating the presumptively reasonable six-month detention period "commences at the beginning of the removal period[,]" the court did not hold that a habeas petitioner is considered detained from the moment he is ordered removed. No. 26-cv-00344, 2026 WL 545453, at *2 (M.D. Fla. Feb. 27, 2026) (alteration added; citing *Akinwale*, 287 F.3d at 1052 n.3). The court there addressed arguments regarding whether the duration of the petitioner's then-ongoing detention could be aggregated with his previous detention to meet the six-month minimum, a question not raised in the present action. *See id.* at *1–2.

The few additional authorities Petitioner cites similarly provide no support for his position. *See Diaz Castro v. U.S. Dep't of Homeland Sec.*, No. 26-cv-00496, 2026 WL 685639 (M.D. Fla. Mar. 11, 2026) (aggregating several periods of detention totaling approximately 15 months); *Diaz v. Warden of the Torrance Cnty. Det. Ctr.*, No. 26-cv-02019, 2026 WL 2030124, at *1 (D.N.M. July 14, 2026) (petitioner detained for over six months); *Mendez v. U.S. Immigr. & Customs Enf't*, No. 26-cv-01448, 2026 WL 1453487, at *1 (D.N.M. May 22, 2026) (same).

In sum, Count I is denied.

***Count II.*** As noted, Count II appears to be a due process claim premised on the interference Petitioner's detention causes with his ability to seek adjustment of status. Petitioner notes federal regulations establish his right to seek adjustment of status under the CAA, regardless of the initiation of removal proceedings against him. (*See* Pet. ¶ 58 (citations omitted)). Petitioner further explains that an agency's failure to adhere to its own regulations can create a due process violation, then contends, without reference to Petitioner's adjustment of status, that his detention "violate[s] the formal processes required by statute and regulations for the Petitioner to seek relief from detention, or generally, relief from removal." (*Id.* ¶ 60 (alteration added); *see also id.* ¶ 59 (citation omitted)).

To the extent Count II is based on Petitioner's right to apply for adjustment of status under the CAA, Petitioner repeatedly specifies that he has done so, that his application is pending, and that aliens ordered removed can still apply for adjustment of status under the CAA. (*See, e.g.*, Pet. ¶¶ 4, 7, 29–32, 52 (citations omitted)). The Court thus cannot discern any violation by Respondents or entitlement to relief for Petitioner on this theory.

To the extent Count II is a claim based on some sort of violation not related to Petitioner's adjustment of status (*see* Pet. ¶ 60), Count II fails because Petitioner does not explain what that violation is, *see, e.g.*, *Fripp v. City of Atlanta*, No. 21-cv-2670, at *12 (N.D. Ga. Oct. 23, 2023) ("It is not the [c]ourt's obligation to construct legal argument for a party, especially when it is represented by counsel." (alteration added; quotation marks and citations omitted)); (*see also* Reply 4 (offering no arguments regarding Count II except to contend, without citation to authority, "that removal in general is not possible as Petitioner has right [sic] to have his application for adjustment of status adjudicated under law and regulations")).

Therefore, Count II is denied.

## IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Petitioner, Jose Castro's Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**. Final judgment will issue by separate order.

**DONE AND ORDERED** in Miami, Florida, this 2nd day of October, 2026.

Cecilia M. Altonaga

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**